UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CITIZENS INSURANCE CO. OF AMERICA
and HANOVER INSURANCE CO.,

Plaintiffs,

v.

CAUSE NO. 3:19-cv-387 DRL-MGG

PANZICA BUILDING CORP. *et al.*,

Defendants.

OPINION & ORDER

Panzica Building Corporation (PBC) is insured by Citizens Insurance Company of America and Hanover Insurance Company. Jennifer and Josh Pennington sued PBC in state court for its negligent design and construction of a swimming pool. Citizens and Hanover seek here a declaratory judgment saying they aren't required to defend or indemnify PBC in the underlying state litigation. The insurers move for summary judgment. The court grants their motion.

FACTUAL BACKGROUND

On January 22, 2015, PBC contracted with Beacon Health System to design and construct a fitness center at Beacon's Mishawaka campus, which included a lap pool (ECF 41-2 at 3-5). The contract said that the "[d]esign services . . . shall be performed by qualified architects and other design professionals. The contractual obligations of such professional persons or entities are undertaken and performed in the interest of [PBC]" (*Id.* at 36).

PBC and another company, Panzica Construction Company, created a joint venture named Panzica2 (ECF 41-5). Subsequently, PBC and Beacon amended the contract through a partial assignment agreement with Panzica2 (ECF 41-3 at 2-3). The assignment, which assigned to Panzica2 all of PBC's rights and obligations except for the design services, provided as follows:

> [PBC] does hereby assign to [Panzica2]: (a) all of [PBC's] rights and obligations under the [Contract], except [PBC] reserves to itself, and does not assign to [Panzica2], all design obligations of [PBC] under the [Contract], which design obligations include all design services that are required by law to be performed by a person or entity who is lawfully licensed to practice architecture[.]"

(ECF 41-3 ¶ 1). Beacon consented to the assignment (ECF 41-3 at 3). The pool was subsequently designed and constructed.

Citizens issued a business liability policy (ECF 41-10) and Hanover issued a commercial umbrella insurance policy (ECF 41-12) to PBC. Both policies cover damages from a "bodily injury" that is caused by an "occurrence" (assuming no exclusion) (ECF 41-10 at 192; ECF 41-12 at 14). Both policies exclude coverage for various professional services (ECF 41-10 at 232 (Citizens' Engineers, Architects or Surveyors Professional Liability Exclusion); ECF 41-10 at 233 (Citizens' Contractors Professional Liability Exclusion); ECF 41-12 at 24, 33 (Hanover's Professional Liability Exclusions); ECF 41-12 at 47 (Hanover's Contractors Errors and Omissions Exclusion)).

On November 16, 2016, Jennifer Pennington was doing a backstroke in the pool and hit her head on a concrete wall (ECF 48-4 ¶ 17). She and her husband filed claims against PBC and other defendants in Indiana state court (ECF 41-4). They asserted multiple theories of liability against PBC regarding the pool: negligent and defective design in count one (ECF 48-4 ¶¶ 19-24), failure to warn and instruct in count two (ECF 48-4 ¶¶ 25-29), and negligence in construction of project in count four (ECF 48-4 ¶¶ 34-39).[1] PBC was sued as a corporation with regard to design defects in counts one and two and as a joint venturer for negligent construction in count four.

Citizens and Hanover say they aren't required to defend or indemnify PBC in the underlying state litigation. The insurance companies seek summary judgment to that effect.

---

[1] The claim in count three didn't concern PBC.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). There must be an actual and justiciable controversy. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). There must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *accord*

*MedImmune*, 549 U.S. at 127. Such a controversy exists here. *See MedImmune*, 549 U.S. at 127; *NUCOR Corp. v. Aceros Y Macquilas de Occidente*, 28 F.3d 572, 579 (7th Cir. 1994) (articulating five factors).

Indiana substantive law applies here.[2] *See Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question [that] is particularly suited for summary judgment." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). Indiana courts generally interpret insurance contracts under the same rules as other contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning . . . even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted). When terms are ambiguous, Indiana courts construe them strictly against the insurer. *Id.* An ambiguity doesn't exist merely "because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms." *Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016).

An insurer's duty to defend or indemnify rests on the allegations in the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). "Typically, an insurer has a duty to defend its insured against suits alleging facts that might fall within the coverage." *Fed. Ind. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997) (applying Indiana law).

    A.    *Claims Regarding the Negligent Design of the Pool and Failure to Warn are Not Insured Because the Alleged Negligence Was Not an "Occurrence" as Required by the Policy.*

Both the Citizens and Hanover policies cover damages when an "occurrence" causes "bodily injury," absent any other policy exclusion (ECF 41-10 at 192; ECF 41-12 at 14). An "occurrence" under both policies is defined as "an accident, including continuous or repeated exposure to

---

[2] The parties concur and cite Indiana law. No choice of law provision has been identified to suggest a different course.

4

substantially the same general harmful conditions" (ECF 41-10 at 206; ECF 41-12 at 30). The first issue is whether the alleged negligence in design or failure to warn was an "occurrence."

As the insured, PBC has the burden of proving that insurance coverage exists. *Nat'l Fire & Cas. Co. v. West By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997) (applying Indiana law). Curiously, PBC hasn't argued that it is covered under the insurance policy's terms, choosing instead to argue only that the claims fall outside the policy's exclusions. Citizens and Hanover contend that the negligent design claims didn't involve an "occurrence," but were instead based on a "professional error and omission."

An occurrence is an accident. Indiana broadly construes "accident" as "an unexpected happening without an intention or design." *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1002 (Ind. 2009). Indiana distinguishes between an "occurrence" in a commercial general liability (CGL) policy and claims based on "commercial or professional conduct." *Id.* Claims based on commercial or professional conduct are ordinarily insured under "errors and omissions" policies. *Id.*; *see Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1272 (Ind. Ct. App. 2009) ("the term 'occurrence' does not contemplate professional error, poor business performance, or breach of contract"). For this reason, CGL policies such as those here "typically exclude claims arising out of professional or other business services." *Tri-Etch*, 909 N.E.2d at 1002 (citing cases). Notably, a "[l]ack of intentional wrongdoing does not convert every business error into an 'accident.'" *Id.* at 1001.

"Occurrences" ordinarily don't include contractual obligations. *Id.* at 1003; *Ind. Farmers*, 917 N.E.2d at 1272. A CGL policy doesn't "guarantee the quality of work or products of its insureds." *Tri-Etch*, 909 N.E.2d at 1001. The distinction between CGL policies and professional E&O policies has been described as follows:

> [T]here is a difference between risks that arise out of a business and business risks. While the former may be covered under a commercial general liability insurance policy, the latter is not. Business risk occurs as a consequence of the insured not performing

5

> well and is a component of every business relationship that is necessarily borne by the insured in order to satisfy its customers.

9A *Couch on Insurance* § 129:1 (3d ed. 2005) (quoted in *Tri-Etch*, 909 N.E.2d at 1003). Even when a claim sounds in tort rather than contract, as here, if the tort liability arises from contractually assumed duties, it is ordinarily a professional error or omission. *Tri-Etch*, 909 N.E.2d at 1003; *see Westfield Ins. Co. v. Orthopedi & Sports Med. Ctr. of N. Ind., Inc.*, 247 F. Supp.3d 958, 972 (N.D. Ind. 2017) (Lozano, J.) ("The failure to meet a standard of care under a contractually assumed duty is not an 'accident.'"). In contrast to professional errors and omissions, a CGL policy insures against "slip and fall accidents and the like." *Tri-Etch*, 909 N.E.2d at 1004.

Courts have consistently held that liability arising from the failure to perform a contractual duty is a "professional error or omission," not an "accident." *See, e.g.*, *Tri-Etch*, 909 N.E.2d at 1001 (security contractor's failure to call a store, with whom it had contracted for that service, within half hour of closing time to find out why alarm had not been set was a professional "error or omission," not an "accident"); *Sentinel Ins. Co., Ltd. v. Durham Engineering, Inc.*, 431 F. Supp.3d 1023, 1031-32 (S.D. Ind. 2020) (failure of health and safety subconsultant on highway construction project to perform proper construction inspection services didn't constitute an "occurrence"); *Westfield Ins.*, 247 F. Supp.3d at 972 (patients' claims that insured medical clinic and physicians negligently selected pharmacy and supplier of medicine following patients' contraction of injuries after treatment didn't allege an "accident" under CGL policy, but was instead an "error or omission"); *Allstate Ins. Co. v. Preferred Fin. Solutions, Inc.*, 8 F. Supp.3d 1039, 1051 (S.D. Ind. 2014) (insured debt adjuster's operation of a debt-relief program in a manner inconsistent with its promises to clients was not an "accident" under its CGL policy). No party has cited any case in which the failure to meet a contractual standard of care is an "occurrence" under a CGL policy in Indiana.

Here, the underlying litigation involves a contractual relationship between Beacon and PBC providing that PBC would design and build the Health & Lifestyle Fitness Center—including the

pool—at Beacon's Mishawaka campus (ECF 41-2 at 3-5). The contract said the architectural services would be provided by Philip E. Panzica of Panzica Architecture Group, acting as a principal of PBC, along with Jeffrey M. Wolf of Design Organization, as a consultant of PBC (ECF 41-2 at 22). Even after the assignment of construction services to Panzica2, PBC retained the obligation to provide design services (ECF 41-3 ¶ 1). The complaint alleges in counts one and two that PBC negligently designed and failed to warn about the pool in which Ms. Pennington was injured (ECF 48-4 ¶¶ 19-29). Beacon sought out PBC for its design expertise.

PBC counters by saying the facts in the underlying litigation establish a question of fact over whether it was involved in designing the pool despite the contractual language. That isn't a question for this court to resolve. Nor has PBC demonstrated that the insurance companies could have reasonably ascertained something different. *See Newnam Mfg.*, 871 N.E.2d at 401. The court won't engage in an analysis of the underlying complaint's merit. Instead, the court looks only to the underlying complaint and asks if coverage would attach if proven. *See Newnam Mfg.*, 871 N.E.2d at 401. Coverage would not attach here.

PBC also argues that the fourth amended complaint contains allegations that it constructed the lap pool such that coverage should apply. It cites to introductory language in the fourth amended complaint concerning the alleged negligence of all defendants—that they were responsible for "designing, *causing to be constructed, accepting as constructed*, failing to warn and instruct, operating, and maintaining a lap pool" (ECF 48-4 ¶ 1) (emphasis added). This same language is repeated in count one (*Id.* ¶ 22). PBC offers this argument to counter the application of certain policy exclusions but not to explain how this establishes an "occurrence" under the policy.

What's more, the fourth amended complaint cannot be fairly read this way. Under count one, PBC "participated in the design process and design of the lap pool" (*Id.* ¶ 20). Count one never alleges that PBC actually constructed anything. It may have caused the lap pool to be constructed, but that

merely underscores that it formed a joint venture, Panzica2, through which construction was completed. Particularly, Panzica2 hired Spear Corporation for construction of the lap pool—a fact that PBC concedes in briefing (ECF 48 at 1-2). This fair reading of count one is underscored by the very next allegation that again focuses only on "design failures" (ECF 48-4 ¶ 23). Only when the Penningtons get to count four do they allege that PBC participated in the construction of the lap pool and then just as "joint venturer" or in supervision of Spear (*Id.* ¶¶ 35-38). A reasonable investigation would reveal, consistent with these allegations, that PBC contracted away its construction obligations to Panzica2 (ECF 41-3 ¶ 1). *See Newnam Mfg.*, 871 N.E.2d at 401 (also considering what reasonable investigation would reveal).

The claims in count one and two don't concern accidents of the slip and fall variety that are covered under a CGL policy. Instead, the claims allege breach of professional contractual duties to design the pool through architectural services and to design warnings for that pool. Breaches of contractual duties like these, or that reasonably arise from contractual duties like these, are not "occurrences" under Indiana law. Accordingly, regardless of any policy exclusions, neither Citizens nor Hanover are required to defend or indemnify PBC for the negligent design and warnings claims in counts one and two in the underlying litigation.

      B.     *Claims Within Counts One and Two Are Excluded from Insurance Coverage.*

Both the Citizens and Hanover insurance policies exclude coverage for an accident that arose "out of the rendering of or failure to render any professional service" (ECF 41-10 at 232 (Citizens' Engineers, Architects or Surveyors Professional Liability Exclusion); ECF 41-10 at 233 (Citizens' Contractors Professional Liability Exclusion); ECF 41-12 at 24, 33 (Hanover's Professional Liability Exclusions), 47 (Hanover's Contractors Errors and Omissions Exclusion)).[3] Three such exclusions

---

[3] The Citizens policy also contained a construction management error and omission exclusion (*see* ECF 41-10 at 231). As discussed *infra*, the negligent construction claim in count four of the underlying complaint doesn't

specifically reference architecture and engineering work. Both policies include the following examples of professional services: "[(1)] [t]he preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and [(2)] [s]upervisory or inspection activities performed as part of any related architectural or engineering activities" (ECF 41-10 at 233; ECF 41-12 at 47).

If an insured meets its burden in establishing that a policy applies, the burden then shifts to the insurer to demonstrate that an exclusion denies coverage. *Nat'l Fire & Cas. Co.*, 107 F.3d at 535. Though PBC didn't meet its initial burden, the court analyzes the exclusions as alternative grounds for its decision. In Indiana, a professional services exclusion may eliminate coverage for negligence claims. *Erie Ins. Grp. v. All. Envtl., Inc.*, 921 F. Supp. 537, 542 (S.D. Ind. 1996) (Hamilton, J.). *Erie*, which has been repeatedly cited by Indiana courts since it was published, articulated the following rules for construing a professional services exclusion:

> In drawing boundaries between alleged wrongs that are within or without the scope of the professional services exclusion, the court must recognize the fact that there are different insurance policies on the market for different purposes. A professional services exclusion in a general business liability policy cannot be read so broadly as to exclude liability for any act at all taken in the course of providing professional services. . . . At the same time, a professional services exclusion also should not be read so narrowly as to transform a general business liability policy into a professional errors and omissions policy.

*Id.* at 542-43. In determining whether a professional services exclusion applies, *Erie* says "the focus must be on whether the claimant is seeking to impose liability for acts which were taken in the course of providing professional services and which drew upon (or at least should have drawn upon) the professional's training, skill, experience, or knowledge." *Id.* The conduct must be "reasonably related" to the professional services. *Id.* at 547. The Indiana Supreme Court later adopted these rules articulated in *Erie* in *Tri-Etch*, 909 N.E.2d at 1003-04.

---

fall within coverage because it alleges liability for PBC based on its role as a joint venturer, which isn't covered under either policy. Accordingly, the court doesn't analyze this exclusion.

In *Erie*, the court held that an insured company inspecting a high school for asbestos, which allegedly made defamatory statements about another company's negligent asbestos removal services to the high school, made its statements in the course of providing professional services—namely, the asbestos inspection. *See Erie*, 921 F. Supp. at 547. *Erie* acknowledged that the insured company's inspection contract didn't expressly call for them to make defamatory comments about the other company, but the court refused to adopt this narrow interpretation of the professional services exclusion. *See id.* Instead, the court said these comments wouldn't have been made but for the contract and they were "reasonably related" to the express duties in the contract. *Id.*; *see also Tri-Etch*, 909 N.E.2d at 1004 (security contractor who failed to render alarm monitoring services by not calling store within half hour of closing time to find out why alarm hadn't been set implicated the "alarm services" exclusion in the insurance policy, which excluded coverage); *Sentinel Ins. Co.*, 431 F. Supp.3d at 1032 (health and safety subconsultant's failure to adequately perform construction inspection services fell within scope of the insurance policy's professional services exclusion even when the subconsultant owed a non-delegable duty of reasonable care and safety to the general public, because the actions were made in the course of providing professional services on a construction project and implicated professional engineering services).

Reading the case law cited by the parties as complete, Indiana seems not to have addressed the application of professional services exclusions to project design services. That said, another court applied *Erie* in holding that an insured company's design upgrades to a wastewater treatment plant fell within an insurance policy's professional services exclusion. *See Orchard v. Phoenix Ins. Co.*, 146 F. Supp.3d 879, 891 (E.D. Mich. 2015) (Michigan law). The insured in that case contracted to design upgrades to the wastewater treatment plant, including providing an engineer onsite to oversee and supervise the general contractor's implementation of the insured's design and construction drawings. *Id.* at 882. An explosion later occurred during the work and resulted in injury and death to employees

10

of the plant. *Id.* at 883-84. The court held that ensuring proper safety precautions on the construction site was reasonably related to the engineering design and overseeing supervision of the project, so the court applied the professional services exclusion. *See id.* at 890-92 ("in assessing potential safety dangers, [the insured company] would have been drawing on its professional experience, skill, judgment, and knowledge").

Here, PBC contracted with Beacon to design the pool. PBC retained for itself in the Panzica2 assignment the role of providing "all design services that are required by law to be performed by a person or entity who is lawfully licensed to practice architecture" (ECF 41-3 at 2). The complaint alleges PBC performed these design services (along with others) (ECF 48-4 ¶ 20). PBC's assignment to Panzica2 dealt only with the construction portion of the contract, not the design services (ECF 41-3 at 2).

PBC once again invites the court to engage in an analysis of the facts in the underlying litigation, but that is beyond the scope of this case. Instead, as with the initial analysis of whether the claims resulted from an "occurrence," the court looks only to the complaint to see if coverage would attach if proven true. The Penningtons in the underlying litigation say PBC negligently designed and failed to warn Beacon about dangers in the pool. These allegations directly implicate the professional design services of architecture and engineering—indeed, the contract between PBC and Beacon acknowledges that only individuals specially and lawfully "licensed" to practice these things would be permitted to perform these design services (ECF 41-2 at 22). The alleged negligence in formulating this design "reasonably relates" to the professional services PBC and Beacon contracted for—in fact, it is the very essence of these professional services. The policies accordingly exclude coverage.

      C.      *Because Count Four's Negligent Construction Claim Names PBC as Joint Venturer, Neither Citizens Nor Hanover Must Defend or Indemnify PBC.*

In their fourth amended complaint in state court, the Penningtons allege a defective workmanship and negligent construction claim against PBC as a joint venturer (ECF 48-4 ¶¶ 11, 35-

36). Citizens and Hanover both say PBC is only covered in its role as a "corporation" and not for work as a "joint venturer," so they are not required to defend or indemnify for this claim.

The Citizens policy says: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations" (ECF 41-10 at 201). The Citizens policy identifies PBC as the named insured, but not for its conduct within the joint venture Panzica2. There is an endorsement in the Citizens policy entitled "Commercial General Liability Enhancement Endorsement—Contractors," which provides for a "Broad Form Named Insured," but this endorsement expressly precludes coverage for a joint venture (ECF 41-10 at 176).

Hanover's policy likewise excludes coverage when PBC acts as a joint venturer: "Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or a majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. . . . No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations" (ECF 41-12 at 17). PBC is the only named insured in the Hanover declarations.

Based on a plain and ordinary reading of the unambiguous insurance contract, *see Everett Cash Mut. Ins. Co.*, 926 N.E.2d at 1012, PBC isn't covered for its role as a joint venturer, as both policies exclude joint venturer insurance unless the joint venture is also listed as a named insured. Neither Citizens nor Hanover listed Panzica2 as a named insured. They listed PBC as a named insured but not vis-à-vis its conduct as a joint venturer. PBC is only insured in its capacity as a corporation. As in *Allstate Ins. Co.*, 8 F. Supp.3d at 1045-48, the court is confined to the plain language of the policies, and PBC is not insured in its role as a joint venturer within Panzica2.

CONCLUSION

Accordingly, the court GRANTS Citizens Insurance Company of America's and Hanover Insurance Company's summary judgment motion (ECF 41), declares that neither insurance company owes a duty to defend or indemnify Panzica Building Corporation in the underlying litigation, and directs entry of judgment for both insurance companies. The court DENIES AS MOOT the motion to continue trial (ECF 50). This order terminates the case.

SO ORDERED.

December 14, 2020                    *s/ Damon R. Leichty*
                                     Judge, United States District Court